UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| TINO ALBERICO, | : | Case No. 3:13-cv-141 |
| Plaintiff, | : | Judge Timothy S. Black |
| vs. | : | |
| LEAP WIRELESS INTERNATIONAL, INC., *et al.*, | : | |
| Defendants. | : | |

**ORDER GRANTING**
**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Doc. 19)**

This civil case is before the Court on Defendants' motion for summary judgment (Doc. 19) and the parties' responsive memoranda (Doc. 23, 25).

## I. BACKGROUND FACTS

Plaintiff maintains that Defendants discriminated against him because of his age when they terminated his position as part of a reduction in force ("RIF") in October 2012. Plaintiff claims that Defendants used the RIF as pretext for terminating his position and for retaining a substantially younger employee who was hired six weeks earlier. Defendants argue that the decision to terminate Plaintiff and several other employees as part of the RIF was based on legitimate business reasons having nothing to do with Plaintiff's age.

## II. UNDISPUTED FACTS[1]

1. Throughout his ten-year employment at Cricket,[2] Plaintiff was based out of Dayton, Ohio, and he was last employed as a Financial Analyst II. (Doc. 14 at 39-40).

2. Plaintiff's position at Cricket was eliminated in connection with a RIF that impacted the entire field finance department and was in response to economic problems. (*Id.* at 88-90, 92, 95, 96, Ex. 9; Doc. 17 at 8-11, 13, 15, 106).

3. As a result of the RIF, on September 23, 2012, Jeff Nachbor informed Brooks Martin, the Vice President of Field Finance at Cricket who oversaw the team for which Plaintiff worked, that Martin needed to decide which four of the seven positions on his team he wanted to eliminate. (Doc. 14 at 77-78; Doc. 17 at 5, 7-9, 13-15, 38, Ex. 1).

4. Ultimately, Martin decided to eliminate Plaintiff's position as part of a workforce reduction that impacted Martin's team as well as the entire finance department at Cricket. (Doc. 14 at 88-90, 92, 95, 96, Ex. 9; Doc. 17 at 8-11, 13, 15, 106.).

5. Going into the decision-making process, Martin wanted to have his entire team located in the same office to allow the team to be more nimble and to make it easier to collaborate by drawing ideas on a white board or presenting concepts to quickly work through issues in-person, without the shortcomings of trying to work through those issues remotely. (Doc. 17 at 14-15, 38-39, 101).

6. Martin also wanted to move his team from being geographically based to being functionally based. He envisioned that his team members post-RIF would specialize in specific financial functions that they would perform for the entire company as opposed to being a generalist for a particular region, which is how the team had been structured prior to the reduction. (*Id.* at 14-15, 38-39, 101).

7. Martin focused on retaining people whose skills and abilities would complement each other instead of overlapping completely. (*Id.* at 53-54).

---

[1] *See* Doc. 19, Ex. 1 and Doc. 24.

[2] Defendants are Leap Wireless International, Inc. and its wholly-owned subsidiary Cricket Communications, Inc. It is undisputed that Cricket was Plaintiff's employer, but the parties disagree whether Leap is a proper party to this litigation as a joint employer. However, because the Court concludes that Plaintiff fails to establish a *prima facie* case of discrimination, the joint employer issue need not be resolved.

8. Immediately before the RIF, Plaintiff was one of four Financial Analyst IIs on Martin's team. (Doc. 14 at 39-40; Doc. 17 at 13-14).

9. In making the RIF decisions concerning his team, Martin eliminated four of the seven positions that reported up to him and three of the four Financial Analyst IIs, including Plaintiff. (Doc. 17 at 9, 17, 21, 25, Ex. 1).

10. In deciding which of the four Financial Analyst IIs on his team to retain, Martin started with geographic location. (Doc. 14 at 39-40; Doc. 17 at 13-14, 17, 21, 38-39, 77.).

11. Based on geographic location, Martin eliminated Plaintiff's position, as Plaintiff was the only finance team member located outside Rolling Meadows (a Chicago suburb) and was the only department employee in Dayton. (Doc. 17 at 9, 22).

12. When the RIF decision was made, all of the members of Martin's team (other than Plaintiff) were located in Rolling Meadows, Illinois. (*Id.* at 9).

13. Martin did not consider the duration of experience at Cricket or performance reviews in deciding which Financial Analyst II to retain and which to let go. (Doc. 19-2 at ¶ 5).

14. In addition to eliminating Plaintiff's position, Martin decided to eliminate the positions of two other Financial Analyst IIs (Hyma Sandra and Dawn Plizga), both of whom were substantially younger than Plaintiff, while retaining Art Obrebski. (Doc. 14 at 10-11, 95; Doc. 17 at 25, Ex. 1).

15. Martin opted to retain Obrebski because he believed that his skills best complemented the remaining members of the team going forward. (Doc. 17 at 53-54).

16. Obrebski and Plaintiff had different job skills. (Doc. 16 at 30, 33-35, 37-38; Doc. 17 at 51-54, 58-63, 66-67, 78-79).

17. Of all the Financial Analyst IIs on Martin's team before the RIF, Martin believed Obrebski was the best at handling large sets of data and data mining. (Doc. 16 at 30, 33-35, 37; Doc. 17 at 51-54, 59-61, 78-79).

18. Martin honestly believed that Obrebski's skill set of data mining and otherwise handling large sets of data was necessary for his team going forward after the RIF. (Doc. 17 at 53-54, 78-79; Doc. 19-2 at ¶¶ 5-6).

3

19. Martin believed that Plaintiff's work primarily included traditional financial analysis and management reporting, which Martin considered to be neither unique nor complementary of the skill sets of others on Martin's team post-RIF, as those skills were already covered by other people who were being retained, including Acri, Sinnott, and Martin. (Doc. 16 at 34, 37-38; Doc. 17 at 52-54, 59-63).

20. Even if Plaintiff would have been located in Rolling Meadows, Martin still would still have retained Obrebski because he believed that Obrebski had proved to be extremely proficient at data mining, technical skills, and otherwise handling large sets of data, which was essential to his team going forward, whereas he believed that Plaintiff had not. (Doc. 16 at 30, 33-35, 37; Doc. 17 at 58-62, 66-67, 78-79).

21. Plaintiff has no knowledge regarding the job skills, performance, or experience of the other Financial Analyst IIs (including Obrebski) who were on Martin's team before the RIF. (Doc. 14 at 80-82).

22. Plaintiff does not know what factors Martin considered in deciding which positions to eliminate in the RIF, he does not know how Cricket was planning to restructure Martin's team or the finance department when those decisions were made, and he does not know what skills Martin considered to be the most important for a Financial Analyst II on his team post-RIF. (*Id.* at 90-92).

23. Neither Martin nor any other management employee at Cricket ever made derogatory comments about Plaintiff's age. (*Id.* at 74).

24. No one mentioned Plaintiff's age during the meeting when he was informed that his position was being eliminated in connection with the RIF. (*Id.* at 88-90).

25. The only reason Cricket ever provided to Plaintiff for his job elimination was the RIF. (*Id.* at 88-90).

4

### III.  STANDARD OF REVIEW

Summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure.  A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact and that the movant is entitled to summary judgment as a matter of law.  Fed. R. Civ. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248 (1986).

"Summary judgment is only appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'"  *Keweenaw Bay Indian Comm. v. Rising*, 477 F.3d 881, 886 (6th Cir. 2007) (quoting Fed. R. Civ. P. 56(c)).

"Weighing of the evidence or making credibility determinations are prohibited at summary judgment - rather, all facts must be viewed in the light most favorable to the non-moving party." *Id*.

Once "a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading." *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010) (citation omitted). Instead, the party opposing summary judgment "must - by affidavits or as otherwise provided in this rule - set out specific facts showing a genuine issue for trial." *Id.* (citation omitted).

Further, Rule 56(c) states that "[a] party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . or . . . showing that the material cited do not establish the absence . . . of a genuine dispute." Where "a party fails . . . to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e)(2).

## IV.  ANALYSIS

Plaintiff alleges that Defendants discriminated against him on the basis of age in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.*, and Ohio Revised Code Chapter 4112. "Age discrimination claims brought under Ohio law are analyzed under the same standards as federal claims brought under the [ADEA]." *Wharton v. Gorman-Rupp Co.*, 309 F. App'x 990, 995 (6th Cir. 2009).

Absent direct evidence of discrimination, Plaintiff must prove discrimination under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

The first step of the *McDonnell Douglas* burden-shifting framework is that Plaintiff must establish a *prima facie* case of discrimination. To make a *prima facie* case, Plaintiff must evidence the following elements: (1) that he was a member of a protected class; (2) that he was discharged; (3) that he was qualified for the position held; and (4) that he was replaced by someone outside of the protected class. *Geiger v. Tower Auto.*, 579 F.3d 614, 622 (6th Cir. 2009).

The parties agree that Plaintiff was terminated as part of a RIF. When a plaintiff is terminated as part of a RIF, the plaintiff must meet a "heightened standard" to establish the fourth element of his *prima facie* case and is required to provide "additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons." *Id.* at 623.

If the plaintiff establishes a *prima facie* case, the burden of production shifts to the employer to identify a legitimate, nondiscriminatory reason for the adverse employment decision. *Arendale v. City of Memphis*, 519 F.3d 587, 603 (6th Cir. 2008). If the employer meets this burden of production, then the burden shifts back to the plaintiff to prove by a preponderance of the evidence that the legitimate, non-discriminatory reason given is a pretext for discrimination. *Id.*

The overall burden of persuasion remains with the plaintiff at all times. *Id.*

### A. *Prima Facie* Case

The parties agree that Plaintiff satisfies the first three elements of his *prima facie* case and that he was terminated as part of a RIF. Accordingly, to establish the fourth element, Plaintiff must provide "additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons." *Barnes*, 896 F.2d at 1465. "The guiding principle is that the evidence must be sufficiently probative to allow a fact finder to believe that the employer intentionally discriminated against the plaintiff." *Id.* at 1466.

### *1. Statistical Evidence*

For statistical evidence to create an inference of discrimination, "the statistics must show a significant disparity and eliminate the most common nondiscriminatory explanations for the disparity." *Barnes*, 896 F.2d at 1466.  The sample size must be sufficient to provide reliable and probative data.  *See Schoonmaker v. Spartan Graphics Leasing, LLC*, 595 F.3d 261, 267 (6th Cir. 2010) (concluding that evidence that the two oldest employees were terminated does not constitute "additional evidence" because "such a small statistical sample is not probative of discrimination").

Plaintiff provides statistics based on a sample size of at most seven employees. Plaintiff's sample is not sufficient to evidence discrimination.  *See, e.g.*, *Conley v. U.S. Bank Nat'l Ass'n*, 211 F. App'x 402, 407 (6th Cir. 2006) (concluding that "this small sample size [ten], gives [plaintiff]'s statistics little or no probative value"); *Williams v. Tyco Elec. Corp.*, 161 F. App'x 526, 535 (6th Cir. 2006) (determining that a sample size of twenty, of which five employees were terminated, was too small); *McCraw v. Ohio Bell Tel. Co.*, No. 1:12-cv-1620, 2013 U.S. Dist. LEXIS 103570, at *19 (N.D. Ohio July 24, 2013) (holding that a sample size of eight was "unquestionably too small to be statistically significant, and [could not] support an inference of discrimination").

### *2. Circumstantial Evidence*

Circumstantial evidence may consist of proof that the plaintiff "possessed qualifications superior to those of a younger co-worker working in the same position." *Barnes*, 896 F.2d at 1466.  A demonstration of superior skills must be based on evidence such as "objective, company-established criteria," *Schoonmaker*, 595 F.3d at 266, rather

than Plaintiff's subjective belief based on "self-selected qualifications." *Copeland v. Regent Elec., Inc.*, 499 F. App'x 425, 433 (6th Cir. 2012).

Plaintiff offers several pieces of circumstantial evidence to satisfy his heightened burden: Obrebski's hiring six weeks prior to the RIF, Obrebski's failure to satisfy the minimum qualifications in the job posting, the potential that a jury could conclude that Plaintiff was more qualified than the two terminated employees and possessed the same skills as Obrebski, and Martin's quick determination of which positions to terminate without considering whether Plaintiff would transfer to Chicago. (Doc. 23 at 8-9, 15).

Defendants hired Obrebski six weeks before the RIF to fill an opening caused by a voluntary departure.[3] (Doc. 17 at 32). Although it is undisputed that in July 2012 Martin knew that his market was underperforming and potentially could be sold (Doc. 17 at 98), this Court will not second-guess the business decision to fill a vacancy as "it is inappropriate for the judiciary to substitute its judgment for that of management." *Smith v. Leggett Wire Co.*, 220 F.3d 752, 763 (6th Cir. 2000). Defendants did not actually terminate Plaintiff's position until October 9, 2012, at which point Obrebski had completed his training. (Doc. 14 at 88-89, Ex. 9). The timing and circumstances of Obrebski's hiring is not sufficiently probative to allow a jury to infer that Defendants selected Plaintiff's position for termination because of his age.

Plaintiff's focus on Obrebski's alleged failure to meet the minimum qualifications in the job description is misguided and unavailing. Plaintiff relies on the terms of a

---

[3] Plaintiff does not argue that Obrebski's recent hiring is evidence that there was not a true RIF.

9

February 2004 job description, which required four years of experience and does not reference data mining skills. (Doc. 23, Ex. D). Plaintiff alleges that the May 2012 job posting, which required two years' minimum experience and referenced data mining skills, was not produced until after Plaintiff's counsel noted that Obrebski failed to satisfy the minimum requirements of the February 2004 posting. (Doc. 19-2, Ex. A). Plaintiff appears to attack the authenticity of the May 2012 posting and argues that the sequence of production could lead a jury to conclude that the May 2012 posting was merely an attempt to justify Plaintiff's termination. (Doc. 23 at 15).

However, Plaintiff fails to rebut Martin's sworn statement that he hired Obrebski based on the May 2012 posting and that Obrebski met all the minimum qualifications. (Doc. 19-2 at ¶ 8). The same skills and qualifications applicable to Obrebski's hiring are undoubtedly also relevant to his retention, but "employers are not rigidly bound by the language in a job description." *Browning v. Dep't of Army*, 436 F.3d 692, 696 (6th Cir. 2006).

Plaintiff fails to evidence that he possessed superior qualifications than Obrebski. The proper point of comparison is to retained employees, so Plaintiff's argument regarding his superior qualifications to the other two terminated Financial Analyst IIs is not relevant. *See Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 353 (6th Cir. 1998) (clarifying that a comparison must be to an employee who received more favorable treatment). Plaintiff identifies positive performance reviews dating back to 2004, but these reviews do not account for recent changes to the position, such as the

10

focus on data mining, and do not provide any basis to compare Plaintiff's qualifications with Obrebski's.

Plaintiff focuses on the argument that "[a] jury could thus conclude that Obrebski did not have any demonstrated skills which [Plaintiff] did not." (Doc. 23 at 15). However, construing all the evidence in Plaintiff's favor, he has at best created a genuine dispute as to whether Plaintiff and Obrebski possessed equivalent skills. Such a showing is not sufficient to meet the heightened burden, which requires a showing that Plaintiff "possessed qualifications superior to those of a younger co-worker." *Barnes*, 896 F.2d at 1466. As the Sixth Circuit has made clear, "an ADEA plaintiff cannot meet the 'additional evidence' requirement by showing only that a younger person was retained in a position which [the] plaintiff is capable of performing." *Kremp v. ITW Air Mgmt.*, 478 F. App'x 931, 933 (6th Cir. 2012).

The timing and circumstances of Martin's decision do not create additional evidence that Plaintiff was singled out because of his age.[4] It is "clearly established that an employer has no duty under ADEA to permit an employee to transfer to another position or to displace workers with less seniority when the employee's position is

---

[4] Plaintiff also argues that Defendant provided shifting justifications for its decision to terminate him, allegedly shifting between geographic location and skills. However, such an inquiry is only relevant to pretext, so the Court may not address it as part of the *prima facie* case. *See Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 574 (6th Cir. 2003) (*en banc*) ("[A] court may not consider the employer's alleged nondiscriminatory reason for taking an adverse employment action when analyzing *the prima facie* case."). Moreover, even if the Court considered shifting justifications as part of the *prima facie* case analysis, a plaintiff's "belief that she was a better worker . . . and that [her employer] gave inconsistent and subjective justifications for laying her off . . . simply does not show age discrimination, and accordingly it does not establish the kind of 'additional evidence' of discrimination that *Barnes* requires in a reduction-in-force setting." *Schoonmaker*, 595 F.3d at 268.

11

eliminated as part of a work force reduction." *Barnes*, 896 F.2d at 1469. Martin was not required to consider relocating Plaintiff to Chicago, and the attendant relocation expenses and uncertainty regarding the potential sale of the Chicago market further support this decision. (Doc. 17 at 94, 98, 105). Plaintiff identifies a younger employee whom Defendants transferred, but that employee held a managerial position, was based in a different market not subject to sale, and was not under Martin's control. (Doc. 17 at 71, 110, 112). This comparison is unavailing because the employees are not similarly situated in all relevant respects. *See Ercegovich*, 154 F.3d at 352-53.

Plaintiff has failed to meet his heightened burden of producing "additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons." *Geiger*, 579 F.3d at 623. "When an employer implements a RIF, the unfortunate fact is that someone has to go. It is not the prerogative of the courts to engage in the post-hoc management of the employer's internal affairs by second-guessing how personnel could have been more equitably allotted, or cost-savings better realized." *Norbuta v. Loctite Corp.*, 1 F. App'x 305, 314 (6th Cir. 2001). Martin was faced with the unenviable task of terminating four of his seven team members. "The mere termination of a competent employee when an employer is making cutbacks due to economic necessity is insufficient to establish a *prima facie* case of age discrimination." *LaGrant v. Gulf & W. Mfg. Co., Inc.*, 748 F.2d 1087, 1090 (6th Cir. 1984). Plaintiff has not produced additional direct, circumstantial, or statistical evidence that indicates Martin terminated Plaintiff because of his age. *See*

*Barnes*, 896 F.2d at 1466.  Therefore, construing all facts in favor of Plaintiff, he fails as a matter of law to establish a *prima facie* case of discrimination.

## V.     CONCLUSION

Accordingly, for the foregoing reasons, Defendants' motion for summary judgment (Doc. 19) is **GRANTED**. The Clerk shall enter judgment accordingly, whereupon this case is **CLOSED** in this Court.

   **IT IS SO ORDERED.**

Date:  7/18/14                                           *s/ Timothy S. Black*
                                                                    Timothy S. Black
                                                                    United States District Judge